Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court, 5th District, State of Illinois is now in session. The Honorable Justice Welch presiding along with Justice Cates and Justice Wharton. First case this morning is number 5-17-0341, People v. Hampton. Arguing for the appellant, Tony Hampton, is Jennifer Lassie. Arguing for the appellee, People of the State of Illinois, is Jessica Book. Each side will have 20 minutes for their argument. The appellant will also have five minutes for rebuttal. You'll see the digital timekeeping device on my screen. When time has expired, I will bang the gavel. Finally, please remember, no photographs and only the clerk of the court is permitted to record these proceedings today. Counsel, are the appellant ready? If so, proceed. Thank you, Your Honor. May it please the court. My name is Jennifer Lassie with the State Appellate Defender, and I represent the defendant appellant, Tony Hampton. Tony's intellectual disability meant that he had the cognitive equivalent of a 10 or 11-year-old child, which led to several issues in this case. However, I will be focusing on arguments 1 and 2, and if time permits, I would like to touch on argument 3. First, as discussed in argument 2, the trial court erred in refusing to instruct the jury on second-degree murder. The state argues that because a rational trier of fact could find Tony guilty of first-degree murder, no error occurred when the court refused a second-degree murder instruction. The standard cited by the state is not the correct standard and does not apply here. That standard only applies when a defendant challenges the sufficiency of the evidence. That standard does not apply when a defendant challenges the sufficiency of the evidence. In fact, because second-degree murder is a less murder, before a jury can address whether second-degree murder occurred, it must first find all of the some evidence, even slight evidence, of self-defense. Self-defense becomes second-degree murder where the defendant believes he was acting in self-defense, but his belief was unreasonable. In order to obtain the instruction on self-defense, a defendant has to establish some evidence of six factors. First, he must show some evidence that force was threatened against a person, the person was not the aggressor, the danger of harm was imminent, the threatened force was unlawful, the person actually and subjectively believed danger existed that required the use of force applied, and the person's beliefs were objectively reasonable. Now, whether his beliefs were objectively reasonable was a question for the jury, and if they found that they were not objectively reasonable, that would have led to second-degree murder. Here, at least five factors were present, and the sixth factor was a question for the jury. Tony testified that he heard gunshots coming from the club area where Robbins was, and he heard those shots before Alan and Tony started shooting, and before Alan opened the door of the car. Tony testified that he feared for his life. He can be seen on video shielding his body from behind an SUV before approaching Robbins, and Tony shot at Robbins to protect, Tony testified that he shot at Robbins to protect himself and his friends. And also, the surveillance video shows that someone may have removed a gun from Robbins' body. Additionally, there was a blind spot on the video just after Robbins turned the corner and before the shooting started. The final factor, whether Tony's belief was reasonable, was a question for the jury. A defendant only needs to present some evidence of these factors, even very slight evidence, and the trial court is not to weigh the evidence when determining whether an to give the self-defense or secondary murder instructions, and the court's sole reason seemed to be that Tony advanced upon the threat. The court indicated that it understood counsel's argument up until Tony left from behind the safety of the SUV where he was shielding himself. It was the fact that Tony advanced and continued to shoot that caused the court to deny the request. Whether Tony's actions or beliefs were reasonable was an issue for the jury and the jury alone. The law prohibits the trial court from weighing the evidence and prohibits the court from deciding whether his actions were reasonable. Now, the state cites to Tony's testimony that he was not scared of Robbins or that he did not see Robbins with a gun to argue that he should not have received the instruction. A review of the transcripts shows that Tony was confused by the lengthy questioning and, again, he testified that he did hear shots coming from the area where May I ask you a question before you go on? Is it possible for the court to have agreed that perhaps there was a reasonable threat against the defendant, but then once the defendant left his hiding place behind the car, a new issue arises as to whether there's kind of a break in that scenario? In other words, he now does become the aggressor. Can you do that? Can you link those two or break those two? I think that was a question that should have gone to the jury. Again, whether his actions were reasonable, I think it's one continuous act that's occurring here, and whether his actions were reasonable throughout that period, I think that's all a question for the jury. All Mr. Hampton's defense was required to do was present some evidence, even slight evidence, and they more than met that burden here, and that's why this should have gone to the jury, and the jury could have looked at all of the actions, the testimony, all of the evidence as a whole, and applied these six factors and determined the outcome, but the court pre-decided the issue for the jury. Again, it only has to be slight evidence of self-defense, and the self-defense instruction or second-degree murder instruction must be given even where the evidence is inconsistent, conflicting, or of doubtful credibility. The victim does not actually have to be a threat or possess a weapon for the use of deadly force to be justified. It is the defendant's perception of the danger and not the actual danger, which is dispositive. Because counsel requested this jury instruction during the jury instruction conference and raised it in a post-trial motion, this issue was fully preserved, and the state has failed to establish that the instruction error was harmless, and obviously it wasn't harmless. Defense counsel conceded in the opening statements that Tony committed the charged act, and he told the jury the only issue here is self-defense. Where this was the defense's theory of the whole case, Tony was indisputably prejudiced by the court's refusal to give a second-degree murder instruction. Because of this, this court should reverse and remand for a new trial. Unless your honors have questions on that issue, I would like to address this via effective assistance argument. Next, trial counsel's conduct at this trial fell below the professional norms, and it clearly prejudiced Tony. First, even though trial counsel had a pre-trial ruling barring the introduction of prior convictions, counsel brought into evidence prior convictions and pending and unproven charges. Evidence of prior arrests is generally inadmissible, and prior convictions are inadmissible to demonstrate propensity because they are too probative. Prior convictions can persuade a jury that he probably committed the present crime because he's committed crimes before. The erroneous admission of other crimes evidence carries a high risk of prejudice and normally calls for reversal. Now here, the state argues that counsel introduced the evidence to take the sting out of the state's cross-examination. However, before trial, the court ruled the evidence was too prejudicial and that it could not come in unless, if Tony testified, unless he opened the door to that evidence. On pages 27 and 28 of the transcript, the court explained its ruling, and the court explained that because Tony was asserting an affirmative defense of self-defense, the prejudicial effect outweighed the probative value and the evidence could not be explaining that Tony would have to say he had never been in trouble or he would have to say he had the conviction in order to open the door to that evidence. Thus, the state's claim that it could have introduced this on cross-examination or impeached Tony with it is simply not based in this record. This was a serious error because not only did counsel ask about Tony's pending and unproven charges as well as his prior convictions, but Tony, counsel also asked Tony to explain the prior convictions are admitted. Counsel's not allowed to get into the details of those convictions. Here, counsel had Tony explain that he had charges of burglary and tampering, and counsel had Tony explain that he, that tampering meant breaking into vehicles using a screwdriver or other tools. And even though there was a pre-trial ruling barring prior convictions, the jury first learned that Tony had prior convictions during voir dire because trial counsel brought it up then. At that time, the jury was not instructed that it could not consider prior instruction or prior convictions as propensity evidence. Then when Tony testified about his prior convictions, the jury was not instructed that they could not consider that as propensity evidence. It was only at the end of the three-day trial that the jury was told was that relevant instruction saying that you cannot consider those as propensity. So if the jury concluded that Tony probably committed this murder because he was a bad person who had committed other crimes, it was allowed to think that for days until the case and it was told otherwise. A reasonable attorney, yes, your honor. I have trouble with your arguments because they seem almost inconsistent to me where the defense counsel admits there's this shooting and that the only issue is self-defense. And then you argue, well, okay, now we're talking about other crimes. And while I understand the law on other crimes and how they're inadmissible, it just seems to me that if you're arguing the instruction why is this relevant? I mean, it really doesn't matter. Oh, I'm sorry. So I, so the instruction argument is argument two and ineffective assistance is argument one. Right. But my question is we're to presume that this is trial strategy under the Supreme Court cases, but can't it be trial strategy if he's already conceding an opening argument that your client committed this death and that the only issue is self-defense? Do you mean with respect to bringing in the prior convictions into evidence? Right. Well, so I think, I think the law is clear because prior convictions are so prejudicial. There's no reason for counsel to bring this in as a kind of strategy where you can keep out damaging evidence about your client and you've got a pretrial ruling doing that and where your argument is self-defense. I think there's no reason for counsel to paint Tony as this person with this record when, you know, and to get into the details, even when prior convictions are admissible, counsel is not allowed to get into the details of those convictions. Here, for some reason, even though trial counsel had this pretrial ruling, barring this very prejudicial evidence of other crimes, some of which were just pending charges that had never been proven, counsel brings it all in. Even though his client's credibility was essential here, his defense was Tony's testimony. And because all of that rests, because the whole defense rests on Tony's testimony, to bring this in is incredibly damaging. So I can't think of a strategic reason that counsel would do this. So you're really arguing that these affected his credibility on the self-defense issue, as opposed to propensity to commit the crime? Well, I think it's both. I think the evidence of prior convictions and pending charges does both. And again, where there's a pretrial ruling barring it, there's just no reason to bring it in. You know, it's irrelevant to the facts of the case and other crimes evidence is incredibly damaging because the jury is going to think that if you committed prior crimes, you've probably committed these crimes. And that's the risk with admitting other crimes evidence. And again, there was a pretrial ruling where the trial court had found these prior convictions were too prejudicial. That's the wording that the trial court used. It looked at the prior convictions and found them too prejudicial and barred them from coming into evidence. And in spite of that, it was trial counsel who brought them in when they were Next, trial counsel was also ineffective for failing to object when the state repeatedly questioned Janice about whether a gun was taken from Robbins after the shooting. Now, witnesses are limited to testifying regarding matters about which they have personal knowledge. Witnesses can testify about their personal recollection of an event, but they cannot simply interpret events on a video. Now here, Janice invaded the province of the jury because she testified four separate times without objection that a gun was taken from Robbins. The prejudice here is clear because this was a critical issue. There was a blind spot in the video where Robbins turned that corner right before the shooting began. And whether Robbins had a gun and fired the shots that Tony heard before Alan started shooting and before Tony started shooting was a critical component of the defense's theory of the case. Counsel was arguing self-defense and Tony testified that he heard shots fired from the area where Robbins was. And Janice, having not been a witness to the event, was in no better position than the jury to determine what was taken from Robbins. And from watching the clip on People's Exhibit 1A, the video shows that it could possibly be a gun that was taken from Robbins. This was a very critical point of the defense's case and counsel's failure to object on it and to allow Janice to testify four separate times is simply inexcusable and below the norms of professional conduct. Counsel also failed to object when Janice testified that the man who took something from Robbins walked toward the pink slip which had metal detectors. This implies that if the man had taken a gun it would have been detected at the pink slip but when watching that video it actually shows the man walks off into the dark alleyway and ceases to be visible. It doesn't show him entering the pink slip or any building and again this invaded the province of the jury. Counsel also failed to object when Janice testified that an unnamed source told Janice that the unidentified person on the video took cash. Even though counsel objected once to this questioning, as the state notes in its brief, the state asked the same question and counsel did not object a second time. Now, the state claims that counsel objected to Janice's testimony and the court overruled counsel's objections. However, it is only the one point counsel objects to the hearsay once but fails to object again. Counsel did not object when Janice testified four separate times that it was not a gun that was taken from Robbins. Remind me again, who was the person testifying regarding the video? Was it a lay person or a police officer? It was a police officer. It was detective Janice. Right. Was there any hearing held prior to his testimony about the video that was conducted outside the presence of the jury? I don't believe there was a hearing about whether he could testify and narrate the video. I don't believe that issue was addressed before trial. There was a moment where Janice, before this testimony occurred, there was a moment where the court interrupted the state, called them to the bench for a sidebar and said, this is where we have a problem. This is where he's saying what happened on the video. How is he narrating it? So that occurs during trial, but counsel didn't pick up on that hint and then make the appropriate objections later. Are you, and maybe I missed this in each of the briefs, but are you aware of the Supreme Court case on the silent witness rule? Yes, Your Honor. Let me see. And I think I actually discussed that in the opening brief. I don't have that in front of me. I'm sorry. But let me see. A witness can testify if they, if it would aid the jury. For example, I think that case might've been Johnson. I might have the case name wrong. You're right. Because I reversed on that case. But essentially, if the officer is in no better position than the jury to determine or to aid them in viewing the video to determine what happened, he is not allowed to testify and a new rule within that doctrine, the silent witness doctrine, that there has to be a hearing outside the presence of the jury. That was the basis. If I'm thinking correctly on the case, I got reversed on. They created a new rule on the silent, on when a witness can testify as to what's plainly in a video and whether it's invading the province of the jury. Um, and I didn't see that particularly flushed out in the brief and maybe I'm, it's not in my notes. So I, I didn't see it. Um, but are you aware of that two-step process that the court Supreme court had decided off the top of my head? I'm not from looking at my brief. Um, I can see that I have that a video recording may be used as substantive evidence when there is no testimony of a witness with purse with personal knowledge of what the recording portrays and such evidence speaks for itself. And what did you cite on that? Uh, it looks like people versus Taylor, which is an older case, uh, 2011. Um, but the silent witness rule case where they create a two-step process, the Supreme court issued it maybe a year, two years ago. Um, I, I am, uh, I have heard of it, but I'm not familiar with it off the top of my head, but I would be happy, um, to do supplemental briefing if that's something that the court would, um, if that would aid the court in reaching this decision. Um, okay, go ahead. I'm no, that's, that's a good question. Um, so here, because Janice, uh, was in the same position as the jury to view the video and determine what happened, this issue should have gone to the jury. The jury should have been allowed to see that video and interpret, you know, whether it believed that that was a gun that was taken from Robbins or not. And again, the video is not clear. It's a dark alleyway. It's late at night and it's hard to see. And it may have been a gun that was taken. Um, and again, the state's point in bringing this questioning out was to argue that of course it was not a gun, um, and, and to defeat the self-defense claim. So obviously this was a critical component of the case. Um, and I believe I'm out of time, so I will, I will, uh, address the rest on rebuttal. Thank you. Counsel for the appellee. Yes, your honors. Um, Jessica Book for the people, uh, to respond to defendant's argument, um, regarding Strickland and ineffective assistance of counsel. Um, she touched on, uh, prior convictions first. And, uh, while the court did rule that the state couldn't bring it in, um, the state couldn't bring it in, uh, out of nowhere, basically, unless the defendant brought his, uh, or testified and brought it out. Um, a lot of times, uh, the state, if the defendant testifies can ask questions like, have you been in trouble before? And things like that. If the defendant responds, uh, no, I haven't. Then the state can then question about his prior convictions. Um, so it's our position that defense counsel use trial strategy. Once he realized defendant was going to testify that, uh, Hey, this is probably going to come in. It makes more sense for me to bring it out and have the defendant make everyone aware. It looks like he's being more genuine with the jury when he's saying, yes, I actually do have this criminal history. So to say that, uh, he suffered prejudice as a result of that, um, I think is incorrect. As far as, uh, Janice's testimony also, um, when Janice testified, uh, and was questioned by the state, uh, about whether or not a gun was removed, did they see a gun? Uh, defense counsel did attempt to object, um, in various ways here say was one way and he kept getting overruled. So it is reasonable for defense counsel to think if the question is asked again, I'm going to be overruled again. It would be an exercise in futility to continue to object. Um, that doesn't make his actions unreasonable, um, that rise to the level of, um, ineffective assistance of counsel. Uh, Ms. Book. Yes, ma'am. People versus Taylor that was cited, um, there has to be some foundation laid for the recording by the, by somebody to make it accurate. Was that done in this case? Your honor, uh, there was actually the full video, um, that was introduced as evidence, the full surveillance footage. And then what, what they then did was to make it easier for the jury to comprehend what was happening. Um, they made people's exhibit one a, and I believe through Janice, they established that it showed it represented everything that happened that night and the court let it in that way. But was there, for example, a foundation laid for, um, how the device was set up, what kind of recording was preserved? Um, was there a duplication process involved? Were any of those basic foundational questions that are set forth in Taylor, were those identified in the record? I believe, uh, those were in the record. I didn't cite to them in my brief, um, because that nothing was objected to, uh, but they did do where Janice testified that he went in, he observed the footage as it was being played by the person that worked in the nightclub and bottoms up and that they made a recording from that and, and everything like that. Uh, and there was no objection at any point by any council that there wasn't a foundation laid that would make the surveillance footage properly admitted. Okay. Um, as far as the ineffective assistance of council, um, the state, uh, has the position that, um, first of all, many of the actions that defense council took did not fall below an objective standard of reasonableness. And even, even if some of them did, which we don't think they did, he did not suffer prejudice from these, uh, defense council, uh, uh, said the prior convictions, which I addressed, uh, Janice's testimony. And then they discussed, um, the defense council's failure to utilize Lynch to get an evidence of the imperfect self-defense claim. And, um, in all of those situations, defense council, uh, acted reasonably, uh, was it perfect representation? Did he get an a plus for his representation of the defendant? Uh, that's debatable, but he definitely acted reasonable. Nothing in his actions indicated that, uh, he wasn't attempting to, um, represent him or challenge the state's evidence. Uh, some facts that go that cut into the argument that defense council acted unreasonably and not forcing in evidence through Lynch. Um, and the self-defense claim defendant himself testified multiple times, um, in contradiction to what would be a self-defense claim. And this ties into, um, issue two that was also discussed about the, um, denying the second degree murder instruction. Uh, defendant testified that he never saw any guns on, um, the victim on Robbins, that he didn't know Robbins personally when they were in the club. There was discussion about, uh, a stare down, but defendant testified that he never felt he was the object of the stare down. Um, they, he testified they went out and they sat in the car for a while, um, waiting for Robbins. Um, he testified he wasn't afraid of Robbins. And then to watch the surveillance footage, you'll see, even if he jumps out of the car, uh, even if he, uh, thinks he hears a shot from direction where Robbins is, although he testified he never saw a gun on Robbins, uh, he decides to leave the safety of the truck and then go out when there's no more shooting. Um, he doesn't hear more shooting coming from Robbins direction at that time and then approach Robbins and continually shooting him. And I think that's where the court, uh, didn't buy the second a break, um, per se, when the defendant says, yeah, I heard it getting out of the car, but then I was standing behind this truck and I get out from behind the truck. And then I decide I'm going to approach and shoot Robbins as he's lying face down, um, in the back of the head. And that would be where the trial court says, I don't buy that. Uh, at that point, Robbins was the aggressor. There was no force threatened. Uh, defendant was no longer an imminent danger. Oh, he or his friend were an imminent danger. Um, and no reasonable person would believe that, uh, the force of shooting a gun at someone was necessary at that point. Um, so defendant didn't approve any of those and the court didn't abuse its discretion when it said, I'm not going to send back a second, or I'm not going to inform the jury of the second degree murder instruction. Um, so that, are there any questions at this point? I don't think so. Okay. Thank you guys. Thank you very much. Um, yes, your honors. Uh, one thing that jumps out at me and I, I hope jumps out for you all is that the state is arguing that the defendant on, on second degree murder, the argument, uh, in argument to, uh, the state is arguing that the defendant didn't prove any of those factors and the court didn't buy the defense's second degree murder argument. Again, the trial court is not allowed to weigh the evidence when it's deciding whether to give that second degree murder instruction. The trial court is not to sit there and go through each of the factors and determine whether the defendant has proven those factors. The state is arguing for a standard that does not apply. The standard that applies is only whether the defense introduced some evidence, even slight evidence of self-defense. And even though there is conflicting testimony or inconsistent evidence, the court is still required to give that instruction when there is slight evidence of self-defense. And I think it's clear that that, that burden was met here. The state is asking this court to apply the burden that applies when a defendant is making a reasonable doubt argument, a challenge to the sufficiency of the evidence. And that is the wrong standard. It does not apply here. Um, next with respect to the ineffective assistance claims, it cannot conceivably be trial strategy for defense counsel to have a pretrial ruling where the court has come forth and said, these convictions may not come in because of your self-defense that you are asserting. These convictions are too prejudicial to have that ruling. And for defense counsel to come in early and tell the jury at during jury selection, defendants got prior convictions. And then for the trial counsel to get into the details of the prior convictions, prior convictions, as well as as unproven pending charges that wouldn't come in under any circumstance in this case, um, to get into the details of that, that could not have possibly been trial strategy where the defense where all of the defense rested on the credibility of Tony's testimony. Um, and again, even when prior convictions do come in, counsel is not supposed to get into, to the details of those. And counsel did that here. Additionally, counsel did not ask that the court instruct the jury at the time that it heard that evidence, that it couldn't use it as propensity evidence. So again, if the jury did use it as propensity and found that he must've done this crime because he's done other crimes, the jury was allowed to think that for three days until the close of the case when it was told, Hey, by the way, you can't use this evidence to find him guilty of this crime. Um, and again, evidence, Illinois law is very clear on this point. Evidence of prior arrests and prior convictions are generally inadmissible because they are too probative. They are too likely to persuade a jury that someone is guilty. Um, again, the state claimed during oral argument that, uh, defense counsel made objections to Janice's testimony regarding the gun. A review of the transcripts will show that that is not true. If you review these transcripts, you can see that it was the trial court that was often interrupting questioning to try to aid the defense or to try to get the attention of the defense counsel on a subject. And counsel dropped the ball multiple times. Even detective Janice at one point wouldn't answer a question. The defense counsel posed to him because detective Janice realized it could prejudice the defendant. And even though the something of detective Janice, that's going to prejudice your client. I don't want to miss trial. This record shows that counsel acted unreasonably throughout and have the court and the state counsel for the state not interrupted to stop counsel. We would have raised a lot more errors. There would have been a lot more, um, again, counsel acted unreasonably here and his conduct fell below the professional norms. And these errors were serious and they resulted in prejudice to Tony. Um, because of this, we were, would respectfully request that this court reverse and remand for a new trial based on arguments one and two, or that this court grant the alternative relief, um, as described in the briefing. Did your honors have any questions? I have a question. We have no other questions. Thank you. Counsel's case will be taken under advisement and the order will be issued in due course. You're excused. Thank you. Your honors. Thank you.